**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **PAUL FLECK,** individually and on behalf of others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**CONNEX CREDIT UNION,**<br><br>Defendant. | **Case No.**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Paul Fleck ("Plaintiff"), by and through undersigned counsel, brings this Class Action Complaint (the "Action") on behalf of himself and all others similarly situated against Defendant Connex Credit Union ("CCU" or "Defendant"). Plaintiff alleges the following upon personal knowledge as to his own actions and experiences, and upon information and belief based on the investigation of counsel:

## INTRODUCTION

1. Plaintiff brings this Action on behalf of himself and all others similarly situated arising from a recent cyberattack and data breach by Defendant that compromised their personally identifiable information.

2. Between June 2 and June 3, 2025, an unknown and unauthorized criminal actor infiltrated Defendant's network and exfiltrated, at a minimum, names, account numbers, Social Security numbers, and other government identification information ("PII").

3. In the notice letter Defendant sent to Plaintiff and Class Members on August 7, 2025, attached hereto as **Exhibit A**, Defendant stated as follows:

> **What Happened?** We experienced unusual activity in our cyber environment on June 3, 2025, and immediately started an investigation using independent experts to assist. We later learned that some of our files had been accessed or downloaded without authorization between June 2 and 3, 2025. We then worked to determine whose information was potentially involved in the incident and, on July 27, 2025, completed our review and learned that some of your personal information may have been involved in the incident.
>
> **What Information Was Involved?** The information may have included your name, account number, Social Security number, and/or government ID used to open your account. Please note we have no reason to believe this incident involved unauthorized access to member accounts or funds.
>
> **What We Are Doing.** As soon as Connex discovered the incident, we took the steps described above and implemented measures to enhance network security and minimize the risk of similar incident occurring in the future. We also notified the National Credit Union Administration and federal law enforcement and will provide whatever cooperation may be necessary to hold the perpetrators accountable.

4. While CCU's Data Breach raises numerous concerns, the deficiencies in its notification letter further compounded the harm to victims: (1) CCU delayed more than two months before notifying Plaintiff and Class Members of the breach; (2) CCU failed to disclose whether the cybersecurity threat had been contained or eliminated, leaving victims uncertain as to whether the PII that CCU continues to maintain remains secure; and (3) CCU failed to explain the manner in which the breach occurred. Such information is critical to any data breach victim—particularly in a breach of this magnitude, involving an extensive volume of highly sensitive information.

5. Moreover, CCU's delay in notifying Plaintiff and Class Members of the Data Breach directly violates Connecticut's data breach notification statute, Conn. Gen. Stat. § 36a-701b, which mandates that notice be provided "without unreasonable delay, but no later than sixty days after discovery of the breach." Defendant failed to comply with this requirement.

6. As a result of the Data Breach, Plaintiff and Class Members have suffered injury and ascertainable losses, including the present and imminent threat of fraud and identity theft; loss of the benefit of their bargain; out-of-pocket expenses; loss of the value of their time reasonably spent mitigating the effects of the attack; and the loss and diminution in value of their personal information.

7. In addition, Plaintiff's and Class Members' sensitive PII—entrusted to CCU—was compromised and unlawfully accessed in the Data Breach. Although this information was taken by unauthorized third parties, it also remains in Defendant's possession and, without additional safeguards and independent oversight, remains vulnerable to future cyberattacks and theft.

8. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect victims' PII.

9. Plaintiff brings this class action lawsuit on behalf of himself and those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that Defendant collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party.

10. CCU maintained the PII in a reckless manner. In particular, the PII was maintained on Defendant's computer network in a condition vulnerable to cyberattacks.

The mechanism of the cyberattack and the risk of improper disclosure of Plaintiff's and Class Members' Private Information were well-known to Defendant and similarly situated entities. Defendant was therefore on notice that failing to implement adequate safeguards left such information in a dangerous and vulnerable condition, susceptible to theft. Defendant was further on notice of the severe consequences that would result to Plaintiff and Class Members from its

failure to protect their PII.

11. CCU disregarded the rights of Plaintiff and Class Members (defined below) by, among other things, intentionally, willfully, recklessly, or negligently: (1) failing to implement adequate and reasonable measures to protect its data systems against unauthorized intrusions; (2) failing to disclose that its computer systems and security practices were insufficient to safeguard Plaintiff's and Class Members' PII; (3) failing to take standard, reasonably available steps to prevent the Data Breach; (4) failing to properly train staff and employees on appropriate security measures; and (5) failing to provide prompt notice of the Data Breach.

12. In addition, Defendant and its employees failed to adequately monitor the computer network and systems storing the PII. Proper monitoring would have detected the intrusion promptly, rather than allowing cyberthieves to move undetected within Defendant's IT network for months—or even years.

13. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct since the PII that Defendant collected and maintained is now in the hands of data thieves. This present risk will continue for their respective lifetimes.

14. With the PII obtained in the Data Breach, data thieves can commit a wide range of crimes, including opening new financial accounts in Class Members' names, taking out loans in their names, using their identities to obtain medical services, securing government benefits, filing fraudulent tax returns, obtaining driver's licenses with another person's photograph, and providing false information to police during an arrest.

15. As a result of the Data Breach, Plaintiff and Class Members face a current and ongoing risk of fraud and identity theft. They must now—and in the future—vigilantly monitor their financial accounts to protect against unauthorized use of their personal information.

16. Plaintiff and Class Members will incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

17. Plaintiff seeks remedies including, but not limited to, actual, compensatory, and nominal damages, reimbursement of out-of-pocket costs, and injunctive and equitable relief to prevent future harm to himself and the putative Class.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is over 100, and at least one Class member is a citizen of a state that is diverse from Defendant's citizenship.[3] Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

19. This Court has personal jurisdiction over Defendant, because its principal place of business is in Connecticut, and it does a significant amount of business in Connecticut.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant has its principal place of business located in this District, and a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

21. Plaintiff Paul Fleck is an individual citizen of the State of Connecticut and received a notice letter from Defendant notifying him of the Data Breach on or around August 7, 2025. Plaintiff's data was exposed because he is a customer of CCU.

22. Defendant Connex Credit Union is a financial institution with its principal place of business located in North Haven, Connecticut.

## FACTUAL ALLEGATIONS

***CCU's Business and Operations***

23. CCU is one of Connecticut's largest credit unions with over $1 Billion in assets and serving more than 70,000 members across eight branches.[1]

24. In the ordinary course of its business, CCU collects personally identifiable information, including the specific PII that was accessed and compromised in the Data Breach alleged herein.

25. Before opening accounts and receiving services from CCU, Plaintiff and Class Members were required to—and did—provide their PII to CCU.

26. Upon information and belief, CCU promises to maintain the confidentiality of Plaintiff's and Class Members' Private Information to ensure compliance with federal and state laws and regulations, and not to use or disclose Plaintiff's and Class Members' Private Information for non-essential purposes.

27. As a condition of opening an account and receiving services, CCU requires Plaintiff and Class Members to entrust it with highly sensitive personal information, thereby assuming a duty to safeguard such information against unauthorized access and misuse.

28. By obtaining, collecting, and using Plaintiff's and Class Members' Private Information, and deriving benefit therefrom, Defendant assumed legal and equitable duties and knew, or reasonably should have known, that it was obligated to protect such information from unauthorized disclosure.

---

[1] *See* https://www.connexcu.org/home/member-info-resources/corporate-info/about-connex (last accessed August 18, 2025)

29. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members would not have entrusted Defendant with their Private Information had they known that Defendant would fail to implement industry standard protections for that sensitive information.

30. Plaintiff and the Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***The Data Breach***

31. On August 7, 2025, Defendant informed Plaintiff and the Class Members of the Data Breach via a letter. Exhibit A.

32. As referenced above, the personally identifiable information that was compromised includes, but is not limited to, names, account numbers, Social Security numbers, and/or government ID.

33. As a result of CCU's inadequate security measures, Plaintiff and the Class Members face a current, imminent, and ongoing risk of fraud and identity theft, necessitating continual vigilance to mitigate that threat indefinitely.

34. Upon information and belief, the PII was not encrypted prior to the data breach.

35. Upon information and belief, the cyberattack was targeted at Defendant as a company that collects and maintains valuable personal and financial data from its many customers, including Plaintiff and Class Members.

36. Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the PII of Plaintiff and Class Members.

37. CCU had obligations to keep Plaintiff's and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

38. Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

39. CCU expressly and implicitly represented to Plaintiff and Class Members that it would maintain and protect their Private Information, thereby acknowledging the critical importance of safeguarding such information. Plaintiff and Class Members reasonably relied on these representations, including those set forth in Defendant's privacy policies, in providing their sensitive information to Defendant.[2]

***The Data Breach Was Foreseeable, and CCU Knew or Should Have Known of the Risk***

40. It is widely recognized that personally identifiable information, particularly names, constitutes a highly valuable commodity and is a frequent target of cybercriminals.

41. In 2023, a record 3,205 data breaches occurred in the United States, resulting in about 349,221,481 sensitive records being exposed, a greater than 100% increase from 2019.[3]

42. Individuals place a high value not only on their PII, but also on the privacy of that data. For the individual, identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

---

[2] *See* Connex Privacy Policy at https://www.connexcu.org/home/fiFiles/static/documents/PrivacyPolicy.pdf ("To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. Secure FTP site for all member data transfer: password protected, the IP address for people accessing needs to be approved, and the communication string in both directions is encrypted.") (last accessed Aug. 17, 2025).

[3] *See* ITRC (Identity Theft Resource Center), *2023 Data Breach Report* (January 2024), *available at* https://www.idtheftcenter.org/publication/2023-data-breach-report/ (last accessed August 17, 2025).

43. In fact, cyberattacks have become so ubiquitous that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

44. Despite the prevalence of public announcements of data breach and data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

***CCU Had A Duty to Plaintiff and Class Members to Secure Private Information***

45. At all relevant times, CCU owed Plaintiff and the Class Members a duty to: secure their PII using industry-standard methods; encrypt and maintain such information; adequately train its employees; employ available technology to protect its systems from unauthorized access; take reasonable steps to prevent foreseeable harm; and promptly notify Plaintiff and Class Members upon learning that their PII may have been compromised.

46. CCU's duty to implement reasonable security measures arose from the special relationship between Defendant and Plaintiff and the Class Members. This relationship was established because Plaintiff and the Class Members entrusted Defendant with their PII in connection with receiving services from CCU, reasonably relying on Defendant to protect that information. Given this reliance, Defendant knew or should have known that failing to safeguard such information could foreseeably result in harm to Plaintiff and the Class Members.

47. Industry-accepted security standards for businesses that store PII online require, at a minimum:

a. Maintaining a secure firewall configuration;

b. Implementing appropriate system architecture, controls, and access restrictions to safeguard sensitive information;

c. Monitoring for suspicious, irregular, or unauthorized traffic to servers;

d. Detecting the use of compromised or unauthorized credentials to access servers;

e. Monitoring for unusual or unauthorized activity by known users;

f. Detecting access attempts by unknown or unauthorized users;

g. Monitoring for irregular or anomalous server requests;

h. Monitoring server requests involving PII;

i. Identifying server requests originating from VPNs; and

j. Identifying server requests originating from Tor exit nodes.

48. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."4 The FTC further defines "identifying information" as any name or number that can be used, alone or in combination with other data, to identify a specific individual. Such information includes, without limitation, a person's name, Social Security number, date of birth, government-issued driver's license or identification number, alien registration number, passport number, or employer/taxpayer identification number. The FTC's definitions reflect the critical importance of protecting such information from unauthorized access and establish the standard of care that entities like Defendant are expected to uphold in safeguarding the PII of Plaintiff and the Class Members.

49. The consequences of Defendant's failure to protect PII are severe, long-lasting, and often unavoidable. Once PII—particularly Social Security numbers—is compromised, victims are

---

[4] 17 C.F.R. § 248.201 (2013).

at a substantial and ongoing risk of identity theft, fraud, and other harm, which can persist for many years and may require continuous monitoring and remediation to mitigate.

***The Value of Personally Identifiable Information***

50. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200. According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[5]

51. As a growing number of federal courts have begun to recognize the loss of value of PII as a viable damages theory, the sale of PII from data breaches, as in the Data Breach alleged herein, is particularly harmful to data breach victims – especially when it takes place on the dark web.

52. A sophisticated black market operates on the dark web, enabling criminals to trade in malware, firearms, drugs, and—often—personal and medical information such as the PII at issue here. Because stolen PII is digital, it can be transmitted instantly over the internet while allowing both buyer and seller to remain anonymous. In contrast, physical goods like firearms or drugs require a delivery address. On the dark web, malicious actors can easily obtain usernames

[5] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at:* https://www.privacyaffairs.com/dark-web-price-index-2021/ (last accessed August 17, 2025).

and passwords for streaming services, stolen financial data and account credentials, as well as Social Security numbers, dates of birth, and medical records. This anonymity makes it an ideal environment for those seeking to cause financial harm.

53. Plaintiff and Class Members' PII is a valuable commodity with an active market, which is precisely why the Data Breach occurred. Given the common practice of data thieves, it is likely that this PII is being sold on the dark web. As a result, Plaintiff and Class Members have been deprived of the inherent value of their PII—an injury sufficient to plausibly allege damages arising from the breach.

54. The PII stolen here was particularly harmful.

55. PII includes information that can distinguish, identify, or trace an individual's identity—such as a name or Social Security number—either on its own or when combined with other linked personal details, such as date of birth, place of birth, or mother's maiden name.[6]

56. Given the nature of CCU's Data Breach and the unreasonable delay in notifying Class Members, it is foreseeable that the compromised PII has been, or will be, exploited by hackers and cybercriminals in numerous harmful ways. With this information, they can readily obtain Plaintiff's and Class Members' tax returns, open fraudulent credit card accounts in their names, and commit other forms of identity theft.

57. Plaintiff and Class Members' injuries were the direct and proximate result of Defendant's failure to implement and maintain adequate data security measures.

***Plaintiff's Experience***

[6] *See, e.g.*, OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

58. As a condition of opening an account and receiving services from CCU, Plaintiff was required to—and did—provide his PII to Defendant.

59. To date, Defendant has taken virtually no meaningful steps to adequately protect Plaintiff and Class Members or to compensate them for the injuries they have sustained as a result of the Data Breach—despite the fact that Plaintiff's PII has already been compromised and is likely available on the dark web to anyone seeking to purchase it.

60. The fraud and identity monitoring services offered by Defendant places the burden squarely on Plaintiff and Class Members by requiring them to expend time signing up for the service.

61. Defendant has not compensated Plaintiff and Class Members for the time they will spend monitoring their accounts, placing credit freezes and fraud alerts, changing online passwords and other actions.

62. Plaintiff and Class Members have suffered additional harm as a result of the compromise of their PII in the Data Breach, which is now in the possession of cybercriminals who illegally accessed Defendant's network for the specific purpose of obtaining and exploiting such information.

63. Plaintiff typically takes measures to protect his PII and is very careful about sharing his PII. Plaintiff has never knowingly transmitted unencrypted PII over the internet or other unsecured source.

64. Plaintiff stores any documents containing his PII in a safe and secure location, and he diligently chooses unique usernames and passwords for his online accounts.

65. As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend a considerable amount of time on issues related to this Data Breach. In

response to the Data Breach, Plaintiff has spent significant time monitoring his accounts and credit score, changing his online account passwords and verifying the legitimacy of the Notice and researching the Data Breach. This is time that was lost and unproductive and took away from other activities and duties.

66. Specifically, since the date of the breach Plaintiff has taken action to mitigate the harm he has suffered. Plaintiff has spent and continues to spend time and effort actively monitoring his accounts and credit.

67. Plaintiff also suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Defendant for the purpose of opening an account with CCU, which was compromised in and as a result of the Data Breach.

68. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy.

69. Plaintiff has suffered imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from his PII being placed in the hands of criminals.

70. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Defendant required the PII from Plaintiff as a condition of opening an account and receiving services from CCU. Plaintiff, however, would not have entrusted his PII to Defendant had he known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

71. As a direct result of the Data Breach, Plaintiff anticipates incurring substantial time and expense on an ongoing basis to mitigate and address the harms caused. Plaintiff also faces a

current and continuing heightened risk of identity theft and fraud that is expected to persist for years to come.

## CLASS ACTION ALLEGATIONS

72. Plaintiff brings this suit on behalf of himself and a class of similarly situated individuals under Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil, which is preliminarily defined as:

All individuals identified by Defendant as having been impacted by the Data Breach, including all persons who received a Data Breach notice from Defendant (the "Class").

73. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

74. Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, thousands of individuals have been affected by this breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

75. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

i. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

iv. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

v. Whether Defendant owed a duty to Class Members to safeguard their PII;

vi. Whether Defendant breached its duty to Class Members to safeguard their PII;

vii. Whether computer hackers obtained Class Members' PII in the Data Breach;

viii. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

ix. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

x. Whether Defendant's conduct was negligent;

xi. Whether Defendant's failure to implement and maintain reasonable data security measures constitutes an unfair or deceptive act or practice under Conn. Gen. Stat. § 42-110b(a);

xii. Whether Defendant's delay in notifying consumers of the Data Breach was an unfair or deceptive act or practice;

xiii. Whether Defendant's conduct offended public policy, was immoral, unethical, oppressive, or unscrupulous, and caused substantial injury to consumers;

xiv. Whether Defendant's acts and practices had the tendency or capacity to mislead consumers;

xv. Whether Plaintiffs and Class Members suffered an ascertainable loss of money or property as a result of Defendant's conduct;

xvi. The measure of damages or equitable relief available under CUTPA; and

xvii. Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

76. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class member, was compromised in the Data Breach.

77. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating Class actions, including data privacy litigation of this kind.

78. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

79. Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for

Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

80. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

81. Accordingly, particular issues under Federal Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

i. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

ii. Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

iii. Whether Defendant's failure to institute adequate protective security measures amounted to negligence; and

iv. Whether Defendant failed to take commercially reasonable steps to safeguard PII,

82. All members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

**<u>COUNT I</u>**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

83. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

84. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII for pecuniary gain, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

85. Defendant had a duty under common law to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

86. Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed. The harm that Plaintiff and Class Members experienced was within the zone of foreseeable harm known to Defendant.

87. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between each Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a mandatory step in opening an account and receiving services from CCU. While this special relationship exists independent from any contract, it is recognized by Defendant's privacy practices, as well as applicable laws and regulations. Specifically, Defendant actively solicited and gathered PII as part of its business and was solely responsible for and in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a resulting data breach.

88. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and the Class, to maintain adequate data security.

89. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and the frequency of data breaches in general.

90. Defendant also had a common law duty to prevent foreseeable harm to others.

91. Plaintiff and the Class were the foreseeable and probable victims of Defendant's inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of adequately safeguarding that PII, and the necessity of encrypting PII stored on Defendant's systems. It was foreseeable that Plaintiff and Class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

92. Defendant's conduct created a foreseeable risk of harm to Plaintiff and the Class.

93. Defendant's wrongful conduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping of Plaintiff's and the Class's PII, including basic encryption techniques available to Defendant.

94. Plaintiff and the Class had and have no ability to protect their PII that was in, and remains in, Defendant's possession.

95. Defendant was in a position to effectively protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

96. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—

to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

97. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within Defendant's possession.

98. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII.

99. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

100. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

101. Pursuant to Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), Defendant had a separate and independent duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

102. The FTCA is intended, in part, to protect individuals whose PII is maintained by another and who are unable to safeguard their information as they cannot exercise control or direction over the data security practices.

103. Plaintiff and the members of the Class are within the class of persons that the FTCA was intended to protect as their PII was collected and maintained by Defendant and they were unable to exercise control over Defendant's data security practices.

104. The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against.

105. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the members of the Class.

106. Defendant breached its duties to Plaintiff and the members of the Class under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

107. Had Plaintiff and the members of the Class known that Defendant would not adequately protect their Private Information, Plaintiff and the members of the Class would not have entrusted Defendant with their Private Information.

108. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the members of the Class, they would not have been injured.

109. The injury and harm suffered by Plaintiff and the members of the Class was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiff and the members of the Class to experience the foreseeable harms associated with the exposure of their Private Information.

110. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class Members.

111. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered, and will continue to suffer, injuries including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic damages.

112. As a further direct and proximate result of Defendant's negligence, Plaintiff and the Class remain at ongoing risk of additional harm because their PII is still in Defendant's possession and vulnerable to further unauthorized disclosure unless and until Defendant implements adequate safeguards.

113. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class are entitled to actual, consequential, and nominal damages, as well as injunctive relief, in amounts to be determined at trial.

**COUNT II**
**BREACH OF IMPLIED-IN-FACT CONTRACT**
**(On Behalf of Plaintiff and the Class)**

114. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

115. Plaintiff and the Class entrusted their PII to Defendant as a condition of opening an account and receiving services from CCU. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

116. At the time Defendant acquired the PII of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and not take unjustified risks when storing the PII.

117. Implicit in the agreements between Plaintiff and Class Members and Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide

118. Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

119. Plaintiff and the Class would not have entrusted their PII to Defendant had they known that Defendant would make the PII internet-accessible, not encrypt sensitive data elements, and not delete the PII that Defendant no longer had a reasonable need to maintain it.

120. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

121. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

122. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

123. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages to be determined at trial.

## COUNT III
## UNJUST ENRICHMENT
## (On Behalf of Plaintiff and the Class)

124. Plaintiff repeats and realleges each and every fact, matter, and allegation set forth above and incorporates them at this point by reference as though set forth in full.

125. This Count is brought in the alternative to Count II, Breach of Implied Contract.

126. Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII. In so conferring this benefit, Plaintiff and Class Members understood that part of the benefit Defendant derived from the PII would be applied to data security efforts to safeguard the PII.

127. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

128. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

129. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

130. Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

131. If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

132. Plaintiff and Class Members have no adequate remedy at law.

133. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft;

134. (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

135. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

136. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

## COUNT IV
**Violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.* (On Behalf of Plaintiff and the Class)**

137. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

138. Defendant is engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

139. In the course of its business, Defendant engaged in unfair or deceptive acts or practices, in violation of CUTPA, including but not limited to:

a) Failing to implement reasonable data security measures to protect Plaintiff's and Class Members' Private Information;

b) Failing to timely detect and contain the Data Breach;

c) Failing to timely notify Plaintiff and Class Members of the Data Breach, despite knowing their PII had been compromised;

d) Misrepresenting, expressly and by omission, the adequacy of its data security measures and the scope of protection afforded to Plaintiff's and Class Members' PII, including in its Privacy Policy and notice letter; and

e) Continuing to retain Plaintiff's and Class Members' PII without implementing adequate safeguards to prevent further unauthorized disclosure.

140. Defendant's conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

141. Defendant's unfair and deceptive acts and practices caused substantial injury to Plaintiff and Class Members, which they could not reasonably avoid and which was not outweighed by countervailing benefits to consumers or competition.

142. As a direct and proximate result of Defendant's violations of CUTPA, Plaintiff and Class Members have suffered ascertainable losses, including loss of privacy, loss of the value of their PII, out-of-pocket expenses, anxiety, emotional distress, and the ongoing risk of fraud and identity theft.

143. Pursuant to Conn. Gen. Stat. § 42-110g, Plaintiff and Class Members are entitled to actual damages, punitive damages, equitable relief, and reasonable attorneys' fees and costs.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff, individually and on behalf of the Class defined herein, prays for judgment as against Defendant as follows:

a) For an Order certifying this action as a Class action and appointing Plaintiff and his counsel to represent the Class;

b) For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c) For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Breach;

d) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

e) Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class;

f) Awarding punitive damages as permitted by law, including under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110g;

g) Awarding Plaintiff and Class Members their reasonable attorneys' fees, costs, and expenses pursuant to applicable law, including Conn. Gen. Stat. § 42-110g(d);

h) For an award of actual damages, compensatory damages, statutory damages and statutory penalties, in an amount to be determined, as allowable by law;

i) For an award of punitive damages, as allowable by law;

j) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

k) Pre-and-post-judgment interest on any amounts awarded and,

l) All such other and further relief as this court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: August 19, 2025

Respectfully submitted,

*/S/ Robert A. Izard*
Robert A. Izard (ct01601)
Craig A. Raabe (ct04116)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com

Hassan A. Zavareei (*Pro Hac Vice* Forthcoming)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Tel: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com

*Counsel for Plaintiff and the Proposed Class*